All right, our third case for this morning is in re Algozine Masonry Restoration, and we should have Mr. Fridman and Ms. Scanlon. We seem to do that. So that's number 23384. So Mr. Fridman, you may proceed. Good morning. May it please the court, counsel. The purpose of the bankruptcy court code is to preserve the debtor's scarce assets and The bankruptcy code devises priorities for certain claims to receive preferential treatment. These are embodied in Section 507 of the code, must be paid by debtor to confirm or plan, or first from liquidation. The policy behind the priority claims is that they're narrowly construed because they receive special treatment not reserved to other creditors. Congress created a new priority in Section 507A5 for employee benefits plan. Now, when they created this priority, they could have included employee benefits plans in 507A4. They chose not to. They created a separate priority that was linked. And 507A5 allows employee benefits plans to capture amounts not paid as wages up to the ceiling set forth in 507A4, which at the time was $12,850 per employee. Now, of all the 507 priorities, which were 10 of them, these are only two that are linked this way. And Congress set a combined limit on both these wages and benefits in this amount. And this limit provided benefits can only be recovered up to the ceiling limit. So, Mr. Friedman, let me cut to the chase here. The biggest problem I have with your argument occurs when I look at the language of the 507B, which is where it says, for each such plan. And these are the unsecured claims for contributions to an employee benefit plan. So, in other words, for each such employee benefit plan, then you get the amount that's produced by this formula, number of employees covered by the plan that then the $12,850 minus the sum of those other two things. And I have a very hard time reading the words for each such plan to require aggregation among two or three or four plans. It's not at all uncommon. There might be a retirement plan. There might be a welfare benefits plan. In this case, there was an annuity plan also. So, how do you get over that language? Your Honor, the way we get over it, if you look at the second part of B2, the formula says we take the product of $12,850 times each employee covered by the plan, but then we start deducting. We take off whatever was paid as an A4 claim in wages. Then we take off whatever was paid to any other employee benefit plans. Right. That's exactly what the plans here did. They have this big annuity, just 13s. They multiply that times the $12,850. They come up with a number. Then they come up with the sum that you take it out of, and you eventually get the cap for each one. It seems like you're making it hard where it really shouldn't be. Your Honor, what the funds did, they did two things. Each particular plan took a separate $12,850 cap. Then what they did is they took the total number of employees multiplied by $12,850. Let's stop there. Why was that wrong? Because B2 says that once you reach the full $12,850 cap, there's nothing left over for the other funds. They're claiming each separate fund gets $12,850 irrespective of the others. Less these other amounts, so that's just a factor in an overall equation. You can write it out The second part, Your Honor, is what they did is they took employees and multiplied by $12,850, but a lot of these employees didn't end up working $12,850 hours. In particular, we had four employees who worked less than that. What the fund is doing by aggregating the total of these employees, they're applying the excess money to employees who are over $12,850, which is a contrary to the priority scheme in 507, 8-4, 8-5, as set forth in the power delivery services case, which the total limit has to be $12,850 per employee. And that's the important part. Where do you get your statement that four employees were not full-time employees? I thought there was some controversy over that. Is that in the record? What happened, Your Honor, during the relevant period, this is in the appendix B050, four employees had earned less than the $12,850 limit. We set out a chart for that. But haven't you waived that argument by stipulating to the amounts owed below? Your Honor, as to the waiver argument, we've always from the beginning said we're paying only the amounts of hours worked plus for the employees covered. We only stipulated that if it's tied to 507, 8-4, our numbers are correct. It's tied to 507, 8-5, where each plan gets a separate $12,850 per employee, then the funds argument would be correct. The problem is we didn't waive the argument as to these four employees because what the fund is doing is they're taking three, each fund is taking a separate $12,850, plus they're taking $12,850 for people who didn't work for $12,850. But did you raise that argument before the bankruptcy? We did raise it. We raised it initially, but they're trying to seek, in our original objection, we stated, pardon me, let me get that section, but the debtor submits the claim should be allowed in the priority amount for actual hours worked during the 180 days before pre-petition. And we always submitted that no matter how many funds they have, the total per employee can only be $12,850. If they have five funds or seven funds or one fund, $12,850 would be the limit. The number of funds is a different question from the number of employees and how many hours did each employee work. I thought that you have not preserved this point. Respectfully, we've always argued that it's for actual hours worked. And the fund, by doing the aggregation, what's happening is they're charging $12,850 for these employees that didn't do $12,850 of work. They're taking that additional sum and adding it. That has nothing to do with whether the three funds or one should be aggregated into one fund or whether there are three funds. It's just a completely different factual point. You know, did employee A work a 30-hour week and somebody else worked a 35-hour week and somebody else worked a 40? I mean that's just a different factual inquiry. Well, it is a different factual inquiry, but the sum total is the ceiling under 507A5 cannot be higher than what's 507A4. So in our case, if we had paid, if we had owed employees $12,850 each employee, there would be no 507A5 claim because the entire amount would be exhausted. But you know, why isn't the more straightforward thing to look at capital B and say Congress told us how to reconcile A4 and A5? They, you know, they put in, the first thing they put in there in subpart two, after you get the number of employees covered by the plan times the relevant allowance, $12,850 at the time, then you get to A2, the aggregate amount paid to such employees under paragraph four. So Congress has instructed how one meshes these two systems together. Incorrect, and we believe it had the amounts we had saved because if you take, if we look at the chart we applied, each employee, the maximum benefits they can get is $12,850. By taking an aggregation, some employees are getting more than $12,850 in benefits, and that's contrary to the calculation scheme and the intent of Congress when they formulated 507A5. Well, if you'd like to save a little for rebuttal, this would be a good time. We really are, thank you. All right, thank you. Ms. Scanlon. Yes, good morning. May it please the Court, my name is Cecilia Scanlon, and I represent the Eppley Creditor Funds, the Chicago Area Joint Welfare Committee for the Pointing, Cleaning, and Caulking Industry Local 52, the Tuck Pointers Local 52 Pension Plan, and the Tuck Pointers Local 52 Defined Contribution Annuity Trust Fund. We are here because Al Gazzini signed a collective agreement with the union that required contributions to be submitted on behalf of its employees to various funds under the collective bargaining agreement. I represent three of those funds. The Chicago Area Joint Welfare Committee for the Pointing, Cleaning, and Caulking Industry Local 52 provides health and welfare benefits to the participants and beneficiaries of that fund. The Tuck Pointers Local 52 Pension Plan provides pension benefits to the participants and beneficiaries of that fund. The Tuck Pointers Local 52 Defined Contribution Annuity Trust Fund provides retirement benefits to the participants of that fund. I do not represent the union, and the union is not a party to this appeal. The fund's position has been quite simple for the past few years. We believe that the limit is a per-plan limit, and there is no requirement to apply a per-employee limitation under Section 507A5. Therefore, each fund may file an individual separate claim for the amounts that are owed on behalf of the participants of that fund and assert a priority claim for a portion of their unsecured claim. Section 507A5 entitles contributions due on behalf of the debtor's employees to a priority treatment when those contributions are due based on services rendered by the employees to the debtor within that 180 days prior to the bankruptcy's petition. Ms. Scanlon, could you comment briefly on what your position is about the state of the record as to the 15, 15, and 13 employees and whether they worked some requisite number of hours? Yes. I believe that when we were before the bankruptcy court, the bankruptcy court judge asked whether or not we would stipulate. If the bankruptcy court judge agreed with Al-Ghazini's position, that $5,500 amount would be the priority claim for all three funds combined. However, if the bankruptcy court agreed with the fund's positions, the funds would be entitled to their three separate claims priority amounts as calculated under our response brief, our supplemental brief before the judge. So, we raised this or when Al-Ghazini raised this issue before the district court judge and began making an argument that the funds were claiming contributions due on behalf of employees who were not working, that's grossly inaccurate because the fund's claim is related to what hours were reported on behalf of Al-Ghazini's employees based on Al-Ghazini's contribution reports. Section 507A5 places a cap on how much may be afforded priority treatment and provides a clear formula as to how to calculate that cap. It does not direct the funds as to how they are to calculate their own claim. And that's where I think the issue is here with Al-Ghazini. Al-Ghazini wants us to read into Section 507A5, an employee limitation. It wants us to make a calculation prior to we even get to Section 507A5, but that's not what's required under the statute. The statute says that there is an allowed unsecured claim for contributions to an employee benefit arising from services rendered within 180 days before the filing of the petition, but only for each such plan to the extent of the number of employees covered by each such plan multiplied, in this instance, $12,850 less the aggregate amount paid to such employees under Paragraph 4 of this subsection. Now here, there are no wage claims under Section 507A4, so we don't have to subtract any wages from that calculation, plus the aggregate amount paid by the estate, the debtor's estate, on behalf of such employees to any other employee benefit plan. And when we did our calculation before the bankruptcy court and when we were before the district court, we laid out that formula. And I know the district court, they also acknowledged that we provided those calculations, and that when we stipulated to those amounts before the bankruptcy court, counsel and I both agreed that these numbers were correct. I want to also address, in Al-Ghazni's reply brief, they note that the funds position is not supported by the case law or the bankruptcy code, and that is just not the case. The Ninth Circuit dealt specifically with the mechanics of Section 507A5, and that is what the funds position relies on. We also cited two other decisions by the bankruptcy courts and district courts, which also agreed with the same decision. It looks like the Ninth Circuit is the only circuit that has addressed this head-on. Is that fair? Yes, yes. All the other decisions are bankruptcy court decisions or district court decisions. I take it there are no bankruptcy appeal panels either? We don't have a BAP here, but many circuits, most circuits do. Right, right. No, I did not see any bankruptcy, or the BAP panel decisions. Al-Ghazni also mentions that the funds position would lead to an absurd result because employees will receive contributions in excess of what they're entitled to, or the funds will receive contributions in excess of what they're entitled to, that the employees will be prejudiced. And I want to stress again that none of the employees are going to receive excess contributions. The amount of the funds claims are directly tied to the hours that they worked. And the cap for each fund is well above what the funds are claiming. Based on that calculation that's under Section 50785, we calculated that the cap was $162,689.44 for the welfare fund, and here the welfare fund is only seeking priority treatment for $21,334.30. The pension fund cap is $159,808.54, and the pension fund is seeking priority treatment for $18,453.40. And the cap for the annuity fund is $127,262.30, and the annuity fund is seeking $11,607.16. And so we believe that the plain and clear unambiguous language of Section 50785 as the District Court found and as the Bankruptcy Court found does not require the funds to combine their claims, nor does it require a per-employee limitation. It's perfectly feasible, it's that aggregate cap is not exceeded. Some employees will benefit by this formula. It's fine. The bankruptcy code, the language that is provided under the bankruptcy code is what it is. We cannot read into Section 50785 a per-employee limitation. Thank you. All right, thank you very much. Anything further, Mr. Fridman, quickly? A couple of points, Your Honor. As to the payment accounts I just mentioned, what that ignores is a pre-petition that the funds have received almost $137,000 in payments they applied to that. So if you add that $137,000 back into what they're seeking, they're seeking in excess of $187,954 right now. But they drastically adjusted their claims down. They were originally asserting $156,000 in sum together and they slashed it down to a much lower number than the $51,000. Your Honor, you're saying that because they received payments within the preference period? Yeah, and I'm saying that's already taken into account. So I don't know that we need to double count that. Well, but that's part of the whole priority claim if you look at that. The second thing, as the ninth district case the council mentioned, that was the Consolidate case, that dealt with administering medical benefit plan payments. This has nothing to do with hourly employees. The benefits in our case are based on the hours reported. And under the funds position, if an employee worked one day or he worked 180 days, they're still entitled to be counted under the aggregate $112,850 cap. And that's where the problem arises. Because they're artificially inflating the aggregation, which is not required under the code. And simply in bankruptcy, we don't pay people for work they didn't do. We're not giving employees $112,850 in A4 just by virtue of being employees. We shouldn't give the funds, the cap of $112,850 for employees that didn't work hours sufficient to get to $12,850. And the council does acknowledge that some employees are getting more than the $12,850 benefit. And that's where the heart of our appeal lies. All right. I think that's a good place to end things. Thank you very much. Thanks to both. We'll take the case under advisement.